IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| WAYNE B. UPSHAW, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-12-3130 |
| INEZ M. TENENBAUM, CHAIRMAN, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION | * |
| Defendant. | * |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

This Memorandum Opinion addresses the Motion to Dismiss, or in the alternative, for Summary Judgment, ECF No. 5, filed by Defendant Inez M. Tenenbaum, Chairman of the United States Consumer Product Safety Commission ("CPSC"). I have reviewed the Motion and accompanying Memorandum in Support, ECF No. 5-1; Plaintiff Wayne B. Upshaw's Opposition, ECF No. 8; and Defendant's Reply, ECF No. 11. A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated herein, Defendant's Motion to Dismiss shall be converted to one for summary judgment, and is DENIED.

I. **BACKGROUND**

Plaintiff is an African-American male, citizen of the United States, and resident of Sterling, Virginia. *See* Compl. ¶ 2, ECF No. 1. His suit stems from the rescission of a tentative offer of employment that was offered to and accepted by Plaintiff in 2008. *Id.* ¶ 4. Specifically,

"Plaintiff sought employment with the [CPSC] by applying for the position of [C]hief [F]inancial [O]fficer, ES-0505-05 in 2008." *Id.* Plaintiff alleges, and Defendant does not dispute that "Plaintiff was found to be the best qualified for the position and received a tentative offer of employment." *Id.* Plaintiff asserts that he "accepted the tentative offer and supplied [D]efendant with all necessary information to be hired." *Id.* Notwithstanding, Plaintiff claims, Defendant withdrew his offer of employment "without good cause and because of [P]laintiff's race" on July 9, 2008. *Id.* The story, however, is not quite so simple.

### A. Factual Background

In February 2008, CPSC announced a vacancy for the position of Chief Financial Officer ("CFO"), a "newly designated position in the Senior Executive Service." Def.'s Mem. 2. Specifically, the "announcement sought applications from individuals with senior level financial management experience to fill a position with oversight for CPSC program planning and evaluation, budget planning and implementation, and agency contracting." *Id.* Sixteen people applied and four, including Plaintiff, were selected for interviews. *Id.* The CPSC's Executive Director, Patricia Semple, interviewed Plaintiff on two occasions, *id.*, determined that Plaintiff was the best qualified individual for the position, *id.*; Compl. ¶ 4, and forwarded her "selection to the CPSC Office of Human Resources ("EXRM") to extend a tentative offer to Plaintiff," Def.'s Mem. 2. On May 6, 2008, EXRM confirmed Plaintiff's tentative offer and acceptance thereof in a written letter. *Id.* At that point, as part of CPSC's "standard operating procedure," it attempted to obtain Plaintiff's Official Personnel File ("OPF") from his previous employer, the Library of Congress ("CRS" or "Library of Congress"). *Id.* Thus, on May 15, 2008, EXRM requested Plaintiff's OPF from the "Human Resources Office at the Library of Congress." *Id.* at 2–3. Plaintiff's records that CPSC "received from the Library of Congress indicated that Plaintiff had

2

been terminated from his position [there] during his probationary period" for "conduct or delinquency after entrance on duty."[1] *Id.* at 3; EEO Report of Investigation 000175 & 000179, Def.'s Mot. Ex. 1, ECF No. 5-2. Upon receipt of Plaintiff's OPF, CPSC Deputy Human Resources Director, Beth Schwab, contacted an unnamed official at the Library of Congress, who confirmed the information in Plaintiff's OPF regarding his termination, but declined to comment on Plaintiff's employment history. Def.'s Mem. 3.

> At this point, from Defendant's perspective, three issues surfaced:
>
> (1) the SF-50 that Plaintiff submitted pursuant to the requirement in the vacancy announcement was not his most recent SF-50, as instructed in the vacancy announcement; (2) [Patricia] Semple noted that when she asked Plaintiff during his interview about the reason for his departure from the Library of Congress, Plaintiff informed her that when a promotion he sought did not materialize, 'he decided not to stay on' there; and (3) the new information the CPSC had about Plaintiff's termination from the Library of Congress required a full background investigation, which would take approximately 120 days and thus delay filling the position.

*Id.* Defendant determined that the position "could not remain vacant for four more months with the possibility that Plaintiff still might not be qualified after completion of the [120 day] investigation." *Id.* Thus, on May 21, 2008, Deputy Human Resources Director Beth Schwab "called Plaintiff and told him that the CPSC was withdrawing the tentative offer of employment and no longer considering him for the CFO position." *Id.* According to Defendant, Ms. Schwab explained to Plaintiff that the information contained in his OPF required that he receive a "favorably completed background investigation before he could be eligible for appointment," that the investigation could take up to 120 days, and that because CPSC needed to fill the CFO position immediately, it no longer was interested in hiring Plaintiff for the position. *Id.* During

---

[1] In his opposition to Defendant's Motion to Dismiss, Plaintiff disputes that he was terminated from his job at the Library of Congress and asserts that he left his position there because "his conditional appointment was not converted to permanent during his probationary period." Pl.'s Opp'n 2.

3

that conversation, Plaintiff informed Ms. Schwab that he had not been terminated from his previous position at CRS. *Id.* at 4. The next day, on May 22, 2008, "after Plaintiff had contacted a CPSC Human Resources staff member, Schwab called Plaintiff [a second time] and explained that the CPSC's decision to withdraw the tentative offer of employment had not changed, reiterating that the CPSC was no longer considering him for the CFO position." *Id.* (internal quotation marks omitted).

Plaintiff tells a different story. Upon receipt of the tentative offer of employment, Plaintiff states that he worked with CPSC Human Resources employee Harriet Taylor in order to process his pre-employment paperwork. EEO Report of Investigation 4–5. He states that Ms. Taylor "informed him that his entrance on duty was not conditioned on completion of the security clearance" and provided him with an "open-ended extension to get in the forms needed to initiate the clearance." *Id.* at 5. Indeed, Plaintiff asserts, when he was first offered the position, CPSC's Human Resources department informed him that "they would set his start date as soon as Office of Personnel Management received the results of his fingerprint check." *Id.* at 4. On May 19, 2008, Plaintiff states that Ms. Schwab "called him to determine the status of his submission of the materials needed for his background investigation" and stated that CPSC "was anxious for his arrival and wanted to know what was delaying [Plaintiff's] entry on duty." *Id.* Plaintiff told Ms. Schwab that he expected to submit his completed pre-employment paperwork in a few days, indicated that Ms. Taylor had provided him with an open-ended extension, and notified Ms. Schwab that the delay had been the result of issues related to fingerprinting. *See id.*

After this conversation, Plaintiff called Ms. Semple, the Executive Director, and spoke with her for approximately an hour on topics related to the CFO position.[2] *Id.*

Plaintiff concedes that two days later, on May 21, 2008, he received a call from Ms. Schwab, during which she informed him "that the CPSC decided to rescind the tentative offer of employment as the agency's Chief Financial Officer." EEO Report of Investigation 000037. Plaintiff asked Ms. Schwab why the offer was being rescinded and, after some pressing, Ms. Schwab informed him that the language on his last employment form from the Library of Congress indicated that he had been fired from his position there. *Id.* Upon hearing that the basis for the withdrawal was CPSC's belief that he had been fired from his position at the Library of Congress, Plaintiff set out to correct what he believed to be a misconception. *See id.* at 4. Plaintiff alleges that he informed Ms. Schwab that he had not been fired and that she, albeit reluctantly, agreed to accept correspondence indicating that Plaintiff was not terminated by his former employer. *See id.* at 5. To that end, Plaintiff faxed to Ms. Schwab a notice demonstrating that he left his previous position because his position was not converted to permanent at the conclusion of a probationary period. *Id.* After his call with Ms. Schwab, Plaintiff contacted Ms. Taylor and requested clarification concerning the status of his candidacy. *Id.* at 5. Plaintiff asserts that Ms. Taylor "informed him that no one had told her about any changes." *Id.* Upon speaking with Ms. Taylor a second time, however, Ms. Taylor stated that a

---

[2] Though not relevant to the court's determination at this juncture, this information provides context for Plaintiff's claims. Although explained in more detail below, briefly, in CPSC's opposition to Plaintiff's appeal of what he alleges to be a lack of due process in CPSC's suitability determination, CPSC listed as one of the reasons for the withdrawal of Plaintiff's tentative offer the fact that Plaintiff "had failed timely to provide the Agency with documents and release forms required to initiate a background investigation." EEO Report of Investigation 000181. Plaintiff disputes the truthfulness of this statement, *see* Pl.'s Opp'n 1–2, and claims that CPSC's "submission . . . making intentional false and inaccurate statements and omitting key information" is what tipped him off to the discriminatory aspect of the withdrawal, *id.* at 9.

"Team Leader had informed her that the offer given to him had been withdrawn." *Id.* Moreover, Plaintiff asserts that Ms. Schwab called again the following day to reiterate that CPSC was "no longer interested in hiring him, and that the employment offer [had been] rescinded." *Id.*

### B. Procedural Background

Plaintiff's EEO Report of Investigation reveals that Plaintiff "subsequently filed an appeal with the Merit Systems Protection Board ("MSPB") to protest the lack of due process given to him in CPSC's suitability determination process." *Id.* On July 8, 2008, CPSC filed its response to Plaintiff's appeal. *Id.* at 000038, 000181–88. The response stated that Plaintiff's tentative offer "was withdrawn prior to the initiation of a background investigation, based upon information included in [his] Official Personnel File indicating that he had been terminated for cause unrelated to performance by his most recent prior federal employer." *Id.* at 000181. Additionally, the response noted that Plaintiff "had failed timely to provide the Agency with documents and release forms required to initiate a background investigation." *Id.* Plaintiff alleges that it was only after he reviewed CPSC's response to his appeal that he "became aware that the [CPSC]'s actions were discriminatory." *Id.* at 5. For example, Plaintiff states that "CPSC took extraordinary measures to justify withdrawing the offer when responding to his MSPB appeal . . . include[ing] making false and inaccurate statements and also misrepresenting information in an effort to cast doubt on his personal integrity." *Id.* at 6.

On August 20, 2008, Plaintiff first contacted an EEO Counselor regarding his complaints against CPSC and its rescission of his tentative offer of employment. Pl.'s Opp'n 9. Plaintiff participated in informal EEO counseling and received a Notice of Right to File on October 28, 2008. Def.'s Mem. 4. Thereafter, on November 14, 2008, Plaintiff filed a complaint with the

EEOC alleging that CPSC discriminated against him on the bases of race and reprisal when it withdrew his tentative offer of employment. *Id.* Plaintiff initially requested a "hearing before an [EEOC] Administrative Judge on his complaint," but later withdrew his request for a hearing and consented to a final agency decision. Compl. ¶ 5. On May 26, 2010, after an investigation, CPSC rendered a final decision on Plaintiff's complaint and determined that Plaintiff "proffered no evidence to show that the agency's action was motivated by discrimination or that management's legitimate nondiscriminatory reasons [for the rescission of the tentative offer] were a pretext to prohibited discrimination." CPSC Final Decision, Def.'s Mot. Ex. B, ECF No. 5-3. Plaintiff appealed. Def.'s Mem. 4. On July 26, 2012, the Office of Federal Operations ("OFO") affirmed the Agency's final decision. EEOC Office of Federal Operations Opinion, Def.'s Mot. Ex. C, ECF No. 5-4. Plaintiff filed the present suit on October 24, 2012, alleging race discrimination and seeking *de novo* review on all issues of the adverse final agency decision. *See* Compl. Specifically, Plaintiff's Complaint alleges that "Defendant's purported reasons for withdrawing the tentative offer of employment—including receipt of information from [P]laintiff's former federal employer that he had been terminated for reasons relating to conduct or delinquency and the need to fill the position in question quickly" were mere pretexts for racial discrimination. *Id.* ¶ 7.

On February 12, 2013, Defendant moved to dismiss Plaintiff's Complaint or, in the alternative, for an entry of judgment in Defendant's favor. *See* Docket. In its motion, Defendant raises two arguments: (1) Plaintiff failed to exhaust his administrative remedies because he did not contact an EEO counselor within 45 days after the tentative offer was withdrawn; and (2) Plaintiff cannot show that the rescission of the offer was discriminatory based on race because he

7

has failed to establish a *prima facie* case of discrimination and because he cannot prove that Defendant's legitimate reasons for the rescission were pretext. Def.'s Mem. 5–15.

## II. STANDARD OF REVIEW

Defendant has filed a Motion to Dismiss[3] or, in the alternative, for Summary Judgment. Def.'s Mot. 1.

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil No. RDB-12-00237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must

---

[3] As Chief Judge Chasanow noted in *Brown v. McKesson Bioservices Corp.*, Civ. No. DKC-2005-0730, 2006 WL 616021, at *3 (D. Md. Mar. 10, 2006), previously, this court has "treated motions to dismiss for failure to exhaust administrative remedies as governed by Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction." Later recognizing a Supreme Court decision and other authorities to the contrary, however, she stated that "[i]t is today reasonably clear that a failure to exhaust administrative remedies based on untimely filings is not an issue of subject matter jurisdiction." *Id.* Of note, this issue has, in the past, been the subject of debate in courts across the country—it has been "variously referred to as a jurisdictional prerequisite to adjudication in the federal courts, a procedural prerequisite to bringing suit, and a requirement that a claimant exhaust administrative remedies." *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 148–49 (4th Cir. 1999). Consistent with Chief Judge Chasanow's determination in *Brown*, and other recent authority within the Fourth Circuit and this District, Defendant's Motion to Dismiss for failure to exhaust administrative remedies shall be analyzed under the Fed. R. Civ. P. 12(b)(6) framework. *See, e.g.*, *Parker v. United Parcel Serv.*, Civil No. DKC-11-1206, 2011 WL 6297973, at *3 (D. Md. Dec. 15, 2011); *Elezovic v. England*, Civil No. PJM-03-3649, 2005 WL 487127, at *3 (D. Md. Feb. 15, 2005).

contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. If, however, the parties present and rely on, and the Court considers, matters beyond the pleadings, the Court will construe the motion to dismiss as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Walker v. True*, 399 F.3d 315, 319 n.2 (4th Cir. 2005); *Offen v. Brenner*, 553 F. Supp. 2d 565, 568 (D. Md. 2008). Such is the case here, and Defendant's motion shall be treated as one for summary judgment.

### B. Motion for Summary Judgment

Summary judgment properly is granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing Fed. R. Civ. P. 56©). A party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997). Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 251. Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

## III. DISCUSSION

A brief discussion of the statutory and regulatory framework for federal employment discrimination claims helps lay the groundwork for resolving Defendant's first argument—that Plaintiff failed to exhaust his administrative remedies. Prior to bringing suit in federal court under Title VII, a "federal employee must timely exhaust all available administrative remedies." *Pueschel v. Veneman*, 185 F. Supp. 2d 566, 568 (D. Md. 2002); *accord* 42 U.S.C. § 2000e–16©; 29 C.F.R. § 1614.407. Of relevance here, a federal employee must contact an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). A prospective plaintiff's failure to contact an EEO Counselor within the 45 days prescribed "is tantamount to failure to timely exhaust all administrative remedies" and "ordinarily results in dismissal of a complaint of discrimination." *Blount v. Dep't of Health & Human Servs.*, 400 F. Supp. 2d 838, 841 (D. Md. 2004) (citing *Jakubiak v. Perry*, 101 F.3d 23, 26–27 (4th Cir. 1996)). The purpose of the requirement is "to encourage early resolution of discrimination claims on a less contentious and less adversarial basis." *Pueschel*, 185 F. Supp. 2d at 568.

After an agency has acted, an employee: (1) may accept the agency's final decision; (2) may appeal the final decision to the EEOC OFO; (3) if the agency ordered relief but the employee does not believe that the agency is complying, may appeal to the OFO for a determination as to compliance; and (4) may file a civil action in federal court. *Murchison v. Astrue*, 689 F. Supp. 2d 781, 789 (D. Md. 2010), *rev'd on other grounds*, 466 Fed. App'x 225 (4th Cir. 2012). Here, Plaintiff "timely appealed the adverse final agency decision to the" OFO, Compl. ¶ 5, and now seeks a "jury trial de novo on all issues as required by law," *id.* ¶ 10.

Briefly, "[i]t is well settled that federal employees enjoy the same right to a trial *de novo* as do private sector employees in Title VII actions." *Scott-Brown v. Cohen*, 220 F. Supp. 2d 504, 506 (D. Md. 2002) (citing *Chandler v. Roudebush*, 425 U.S. 840, 864 (1976)); *see* 42 U.S.C. § 2000e-16(c) (providing right of action if federal employee is aggrieved). Moreover, "'a federal employee who brings a civil action in the district court must put his employing agency's underlying discrimination at issue [even] if the OFO accepts those allegations.'" *Smith v. Vilsack*, 832 F. Supp. 2d 573, 582 (D. Md. 2011) (quoting *Laber v. Harvey*, 438 F.3d 404, 419 (4th Cir. 2006)). The District Court's *de novo* review includes both the factual and legal conclusions of the agency. *See Murchison*, 689 F. Supp. 2d at 790 ("[T]he employee must put the entire issue of whether discrimination occurred in front of the federal court *de novo*.") (citing *Laber*, 438 F.2d at 419–24).

As noted, Defendant asserts that Plaintiff failed to contact an EEO Counselor within the prescribed 45 day period. *See* Def.'s Mem. 8–9. Defendant contends that CPSC withdrew Plaintiff's tentative offer of employment on May 21, 2008, the day that Ms. Schwab first called him and informed him of the rescission, and not on July 9, 2008, as Plaintiff claims. *Id.* at 8. As such, Defendant argues, by waiting until August 20, 2008 to contact an EEO Counselor, Plaintiff failed to exhaust his administrative remedies as required. *Id.* In opposition, Plaintiff argues first that the date of the alleged discriminatory act was July 9, 2008, as indicated in CPSC's EEO Counselor Report,[4] and second, that Defendant has failed to demonstrate that the withdrawal of

---

[4] Notably, Plaintiff offers no support for his conclusion that the discriminatory act occurred on July 9, 2008, other than to say that it must be so because the CPSC's "own EEO Counselor Report indicates" that it did. Indeed, although the court declines to decide this issue at this early stage of litigation, it is difficult to imagine that July 9, 2008 was the date of the matter alleged to be discriminatory—here, the withdrawal of Plaintiff's tentative offer of employment. The record thus far reflects that July 9, 2008 was the day on which CPSC filed its opposition to Plaintiff's appeal to the MSPB to protest what Plaintiff perceived to be a lack of due process

Plaintiff's tentative offer is a "personnel action" within the meaning of 29 C.F.R. § 1614.105.[5] Pl.'s Opp'n 9. Plaintiff also "submits that subsection (a)(2) of 29 C.F.R. § 1614.105 applies since he did not know and reasonably should not have known that the discriminatory action had occurred on the date the job offer was withdrawn." *Id.*

To determine whether Plaintiff contacted an EEO Counselor in a timely fashion, the Court must determine first whether the matter alleged to be discriminatory—here, the withdrawal of Plaintiff's tentative offer—occurred on May 21, 2008, as Defendant asserts, or July 9, 2008, the date that Plaintiff prefers. To that end, there is no doubt that the CPSC's EEO Counselor Report lists July 9, 2008 as the date of the alleged discriminatory action. *See* EEO Report of Investigation 2. There also is no doubt, however, that on May 21, 2008, Plaintiff received a telephone call from Ms. Schwab, CPSC Deputy Director for Human Resources, during which she informed him that the tentative offer of employment had been withdrawn. *Id.* at 4 ("The Complainant stated that he received a call from Ms. Schwab at 12:49 p.m. on May 21, 2008, during which she informed him that the offer of the C[F]O position was being withdrawn."). Noting the factual dispute here, Plaintiff has argued that his case "should not be dismissed at the pre-discovery stage since there are genuine issues of material fact as to whether the defendant discriminated against him based upon his race in withdrawing the offer of employment at issue." Pl.'s Opp'n 1. Plaintiff also requests discovery with regard to Defendant's second argument—

---

afforded to him *after the withdrawal of his tentative offer*. That said, the record does not yet provide sufficient factual detail that would assist the court in understanding why the EEO Investigation Report states that the discriminatory act occurred on July 9, 2008.

[5] Plaintiff's second argument, that the withdrawal of an offer of employment is not a "personnel action" within the meaning of the regulation at issue, does not warrant discussion but to say that it entirely is without merit. 29 C.F.R. § 1614.105(a)(1) requires that a federal employee contact an EEO Counselor within "45 days of the date of the *matter alleged to be discriminatory* or, in the case of personnel action, within 45 days of the effective date of the action." (emphasis added).

that Plaintiff cannot establish a *prima facie* case of employment discrimination. *Id.* at 10–11. Plaintiff asserts that, with the aid of discovery, he would be able to establish that CPSC discriminated against him based on his race, that CPSC withdrew his offer "under circumstances giving rise to an inference of discrimination," and that the withdrawal was mere pretext for discrimination. *Id.*

In a recent *en banc* opinion, the Fourth Circuit reversed a district court's award of summary judgment, holding that the court abused its discretion by granting the plaintiff's motion without affording the defendant any discovery. *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, Nos. 11-1111, 11-1185, 2013 WL 3336884 (4th Cir. July 3, 2013). In that opinion, the court noted that generally, "'summary judgment is appropriate only after adequate time for discovery.'" *Id.* at *9 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). It added:

> Discovery is usually essential in a contested proceeding prior to summary judgment because '[a] party asserting that a fact . . . is genuinely disputed must support the assertion by,' inter alia, 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials.

*Id.* (quoting Fed. R. Civ. P. 56(c)(1)(A)). Indeed, "'by its very nature, the summary judgment process presupposes the existence of an adequate record.'" *Id.* (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3rd Cir. 2007)). A plaintiff's request for discovery prior to the award of summary judgment is "'broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Id.* at *10 (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). Thus, a district court "'must refuse summary judgment where the nonmoving party has not had

the opportunity to discover information essential to its opposition.'" *Id.* at *9 (quoting *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)) (internal quotation marks omitted). This notion is by no means novel, *see, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 341 (D. Md. 2011), and is underscored by the requirements that must be met before a court may convert a motion to dismiss to one for summary judgment—the first requires that "all parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," and the second requires that the parties first be "afforded a reasonable opportunity for discovery," *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *accord Greater Baltimore Ctr. for Pregnancy Concerns*, 2013 WL 3336884, at *10. Additionally, the clear text of Fed. R. Civ. P. 12(d) states that when a motion to dismiss is converted to one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." Intuitively, to satisfy Fed. R. Civ. P. 12(d), a plaintiff must have the opportunity to obtain information pertinent to the motion through discovery—here, the underlying details surrounding CPSC's withdrawal of Plaintiff's tentative offer of employment.

Accordingly, the court does not, at this early stage of litigation, have the benefit of a full record to render a decision on Defendant's motion. Moreover, Plaintiff has requested the opportunity to take discovery, including the "depositions of the persons involved in the decision to withdraw the offer of employment." *See* Pl.'s Opp'n 10. Specifically, he seeks to uncover whether "the agency ha[d] a legitimate, non-discriminatory reason for withdrawing [P]laintiff's job offer" and whether the "withdrawal of the job offer was based upon [P]laintiff's race." *Id.* at 11–12. A "non-moving party's [Fed. R. Civ. P.] 56(d) request for additional discovery is properly denied 'where the additional evidence sought for discovery would not have by itself

created a genuine issue of material fact sufficient to defeat summary judgment.'" *Hamilton*, 807 F. Supp. 2d at 342 (quoting *Strag v. Bd. Of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 953 (4th Cir. 1995)). It cannot be said that such is the case here, and Plaintiff's request for discovery pursuant to Fed. R. Civ. P. 56(d) is GRANTED. *See Greater Baltimore Ctr. for Pregnancy Concerns*, 2013 WL 3336884, at *10.

## IV. CONCLUSION

Wherefore, for the reasons stated herein, Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, is DENIED, without prejudice. Defendant is not precluded from re-raising its arguments in a renewed motion for summary judgment at the conclusion of discovery.

A separate Order shall be issued concurrently with this Memorandum Opinion.


Dated: <u>July 31, 2013</u>　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　Paul W. Grimm
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge


mol