**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **WAYNE B. UPSHAW,** | \* |
| Plaintiff, | \* |
| v. | \* Case No.: PWG-12-3130 |
| **CONSUMER PRODUCT SAFETY COMMISSION,** | \* |
| Defendant. | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

After multiple interviews, Plaintiff Wayne B. Upshaw received a tentative offer for the position of chief financial officer of the Consumer Product Safety Commission (the "Commission"). After allegedly receiving negative information about Upshaw's previous employment with the Library of Congress, the Commission revoked his employment offer. Upshaw contends this was on account of his race. I must decide whether Upshaw failed to exhaust his administrative remedies and whether he has failed to show as a matter of law that the withdrawal was discriminatory, such that summary judgment in the Commission's favor is appropriate. Because I conclude that the time-limit for exhaustion was tolled and that genuine disputes of material fact exist as to the discriminatory motive, I will deny summary judgment, and the case will proceed to trial.[1]

---

[1] Having reviewed the completed briefing of the Commission's summary judgment motion carefully (ECF Nos. 31, 31-1, 32, & 33), I find a hearing is unnecessary because the issues are presented adequately in the filings. *See* Loc. R. 105.6.

I. **BACKGROUND**[2]

Upshaw is an African-American male who filed this suit after the rescission of a tentative offer of employment that he accepted in 2008. *See* Compl. ¶¶ 2, 4, ECF No. 1. Specifically, "Plaintiff sought employment with the [Commission] by applying for the position of chief financial officer, ES-0505-05." *Id.* ¶ 4. He alleges, and the Commission does not dispute, that he "was found to be the best qualified for the position and received a tentative offer of employment." *Id.*; Def.'s Mem. 2, ECF No. 31-1. Upshaw asserts that he "accepted the tentative offer and supplied [D]efendant with all necessary information to be hired." Compl. ¶ 4; *see* Pl.'s Opp'n 1–2, ECF No. 32. Notwithstanding, he claims that the Commission withdrew his offer of employment "without good cause and because of [his] race" on July 9, 2008. Compl. ¶ 4. The story, however, is not quite so simple.

A. **Factual Background**

In February 2008, the Commission announced a vacancy for the position of Chief Financial Officer ("CFO"), a "newly designated position in the Senior Executive Service." Def.'s Mem. 2 (citing EEO Report of Investigation ("ROI") 000175–79, Def.'s Mot. to Dismiss Ex. 1, ECF Nos. 5-2 & 35).[3] Sixteen people applied and four, including Upshaw, were selected for interviews. ROI 000193. The Commission's Executive Director, Patricia Semple,

---

[2] This background section is reproduced from my previous Memorandum Opinion denying the Commission's motion to dismiss, *Upshaw v. Tenenbaum*, No. PWG-12-3130, 2013 WL 3967942, at *1–4 (D. Md. July 31, 2013). I have reproduced it in its entirety because of the fact-intensive nature of resolving the present motion, with updates where discovery has clarified certain facts. Unless otherwise stated, undisputed facts comprise the background. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).

[3] ROI pages 1–14 refer to the report of EEO Investigator Joy Savage. The parties do not dispute the portions of the ROI's findings cited herein. ROI pages 000001–000219 refer to Exhibits 1–20 of the ROI. The report and the exhibits are filed together as Exhibit 1 to Defendant's Motion to Dismiss, ECF Nos. 5-2 & 35.

interviewed Upshaw on two occasions, determined that he was the best qualified individual for the position, and forwarded her "selection to the [Commission's] Office of Human Resources ("EXRM") to extend a tentative offer." *Id.*; Compl. ¶ 4.  On May 6, 2008, EXRM confirmed Upshaw's tentative offer and acceptance thereof in a written letter.  ROI 000193.  At that point, the Commission "issued a standard request" to obtain Upshaw's Official Personnel File ("OPF") from his previous employer, the Library of Congress.  *Id.*  Upshaw's records "received from the Library of Congress indicated that [he] had been terminated from his position [there] during his probationary period" for "conduct or delinquency after entrance on duty."[4]  *Id.* at 000193–94, 000175–79.  Upon receipt of Upshaw's OPF, the Commission's Deputy Human Resources Director, Beth Schwab, contacted "Ms. Lee" at the Library of Congress, who supposedly confirmed the correctness of Upshaw's OPF, but declined to comment on his employment history.  ROI 000072.

The Commission determined, in light of this new information about Upshaw's termination, that his hiring would require "a full background investigation, which would take approximately 120 days and thus delay filling the position." Def.'s Mem. 3.  The Commission determined that the position "could not remain vacant for four more months with the possibility that Plaintiff still might not be qualified after completion of the investigation."  *Id.*  Thus, on May 21, 2008, Schwab "called Plaintiff and told him that the [Commission] was withdrawing the tentative offer of employment and no longer considering him for the CFO position," and explained its reasoning.  *Id.* (citing ROI 000070, 000080, 000190–91).  During that conversation, Upshaw informed Schwab that he had not been terminated from his previous position at the

---

[4] In his opposition, Upshaw disputes that he was terminated from the Library of Congress and asserts, with some supporting evidence, that he left that position because "his conditional appointment was not converted to permanent during his probationary period."  Pl.'s Opp'n 2; *see* Upshaw Decl. ¶¶ 3–5, Pl.'s Opp'n Ex. 1, ECF No. 32-1; ROI 6.

3

Library of Congress. *Id.* at 4. He called a member of the Commission's Human Resources staff the next day, after which Schwab returned his call to reiterate that he was no longer being considered. *Id.*

Upshaw tells a different story. Upon receipt of the tentative offer of employment, he states that he worked with the Commission's Human Resources employee Harriet Taylor to process his pre-employment paperwork. ROI 4–5. He states that Taylor "informed him that his entrance on duty was not conditioned on completion of the security clearance" and that she provided him with an "open-ended extension to get in the forms needed to initiate the clearance." *Id.* at 5; Upshaw Decl. ¶ 4, Pl.'s Opp'n Ex. 1, ECF No. 32-1. Additionally, as the holder of a recently expired top secret security clearance, Upshaw contends that the background investigation would have taken only a few weeks, rather than the four months argued by the Commission. *See* Upshaw Decl. ¶ 9. Indeed, Upshaw asserts that when he first was offered the position, the Commission's Human Resources department informed him that "they would set his start date as soon as Office of Personnel Management received the results of his fingerprint check." ROI 4. Upshaw states that Schwab called him on May 19, 2008 "to determine the status of his submission of the materials needed for his background investigation" and that the Commission "was anxious for his arrival and wanted to know what was delaying his entry on duty." *Id.* Upshaw told Schwab that he expected to submit his completed pre-employment paperwork in a few days, indicated that Taylor had provided him with an open-ended extension, and notified Schwab that the delay had been the result of issues related to fingerprinting. *See id.* After this conversation, Upshaw called Semple and spoke with her for approximately an hour on topics related to the CFO position. *Id.*

Upshaw concedes that—two days later, on May 21, 2008—he received a call from Schwab, during which she informed him that his offer was rescinded. ROI 000037. He asked Schwab why the offer was being rescinded and, after some pressing, Schwab informed him that the OPF received from the Library of Congress indicated he had been fired from that position. *Id.* Upon hearing of this, Upshaw set out to correct what he believed to be a misconception. *See id.* at 4–5. He alleges that he informed Schwab he had not been fired and that she, albeit reluctantly, agreed to accept correspondence indicating that he was not terminated by his former employer. *See id.* at 5. To that end, Upshaw faxed to Schwab a notice demonstrating that he left his previous position because it was not converted to permanent at the conclusion of a probationary period. *Id.* After his call with Schwab, he contacted Taylor and requested clarification concerning the status of his candidacy. *Id.* at 5. Taylor "informed him that no one had told her about any changes." *Id.* After speaking with Taylor a second time, however, she stated that a "Team Leader had informed her that the offer . . . had been withdrawn." *Id.* Moreover, Schwab allegedly called again the following day to reiterate that the Commission was "no longer interested in hiring him, and that the employment offer [had been] rescinded." *Id.*

**B. Procedural Background**

The ROI reveals that Upshaw appealed the Commission's suitability determination to the Merit Systems Protection Board ("MSPB") on Due Process grounds. *Id.* On July 8, 2008, the Commission filed its response to that appeal, *id.* at 000038, 000181–88, which stated that Upshaw's tentative offer "was withdrawn prior to the initiation of a background investigation, based upon information included in [his OPF] indicating that he had been terminated for cause unrelated to performance by his most recent prior federal employer." *Id.* at 000181. Additionally, the Commission's response added a second justification: that Upshaw "had failed

5

timely to provide the Agency with documents and release forms required to initiate a background investigation." *Id.* Upshaw alleges that it was only after he reviewed this response that he "became aware that the [Commission]'s actions were discriminatory." *Id.* at 5; Upshaw Decl. ¶¶ 6–7. Upshaw states that the Commission "took extraordinary measures to justify withdrawing the offer when responding to his MSPB appeal . . . includ[ing] making false and inaccurate statements and also misrepresenting information in an effort to cast doubt on his personal integrity." ROI 6.

On August 20, 2008, Upshaw first contacted an EEO Counselor regarding his complaints against the Commission and its rescission of his tentative offer of employment. Pl.'s Opp'n 3. He participated in informal EEO counseling and received a Notice of Right to File on October 28, 2008. Def.'s Mem. 4. Thereafter, on November 14, 2008, Upshaw filed an EEO complaint alleging that the Commission discriminated against him on the bases of race and reprisal when it withdrew his tentative offer of employment. *Id.* On May 26, 2010, after an investigation, the Commission found no discrimination or retaliation. *Id.* (citing CPSC Final Decision, Def.'s Mot. to Dismiss Ex. B, ECF No. 5-3). On appeal, the Office of Federal Operations ("OFO") affirmed the Commission's final decision on July 26, 2012. *Id.* at 4 (citing EEOC OFO Op., Def.'s Mot. to Dismiss Ex. C, ECF No. 5-4).

Upshaw filed the present suit on October 24, 2012, alleging race discrimination and seeking *de novo* review of all issues of the adverse final agency decision. *See* Compl. Specifically, Upshaw's Complaint alleges that the Commission's "purported reasons for withdrawing the tentative offer of employment—including receipt of information from [P]laintiff's former federal employer that he had been terminated for reasons relating to conduct or delinquency and the need to fill the position in question quickly" were mere pretexts for racial

discrimination. *Id.* ¶ 7. On February 12, 2013, the Commission moved to dismiss Upshaw's Complaint or, in the alternative, for summary judgment. *See* Def.'s Mot. to Dismiss, ECF No. 5. At that time, it was premature to dismiss the Complaint and I allowed Upshaw "the opportunity to take discovery," including the "depositions of the persons involved in the decision to withdraw the offer of employment." *Upshaw v. Tenenbaum*, No. PWG-12-3130, 2013 WL 3967942, at *8 (D. Md. July 31, 2013). After the conclusion of discovery, the Commission filed the pending motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317, 330 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (citing cases). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* at 252.

### III. DISCUSSION

#### A. Failure to Exhaust Administrative Remedies

First, the Commission reasserts an argument from its motion to dismiss that Upshaw failed to exhaust his administrative remedies.[5] I explained the statutory background in detail in my previous Memorandum Opinion, *Upshaw*, 2013 WL 3967942, at *5, and need not repeat it in detail here. Briefly, prior to filing a Title VII suit, a federal employee must contact an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The failure to do so "is tantamount to failure to timely exhaust all administrative remedies" and "ordinarily results in dismissal of a complaint of discrimination." *Blount v. Dep't of Health & Human Servs.*, 400 F. Supp. 2d 838, 841 (D. Md. 2004) (citing *Jakubiak v. Perry*, 101 F.3d 23, 26–27 (4th Cir. 1996)).

*1. Forty-Five Day Deadline*

The Commission presents unrebutted evidence that Upshaw failed to contact an EEO Counselor within 45 days of the withdrawal of his job offer on May 21, 2008—the day that Schwab first called to inform him of the rescission. Def.'s Mem. 7 (citing Upshaw Depo. Tr. 23:18 – 25:10, Def.'s Mot. Ex. 1, ECF No. 31-2; ROI 000037). However, Upshaw argues that the withdrawal of an offer of employment is not a "personnel action" within the meaning of 29 C.F.R. § 1614.105(a)(1), meaning it does not start the 45-day clock. Pl.'s Opp'n 6–7. Instead, Upshaw urges me to apply the definition of "personnel action" from 22 U.S.C. § 3905(a), a statute that sets personnel requirements for members of the foreign service. Pl.'s Opp'n 6. This

---

[5] In the Memorandum Opinion denying the Commission's motion to dismiss as premature given the lack of discovery in this case, I permitted the Commission to raise this argument again after discovery. *See Upshaw*, 2013 WL 3967942, at *8.

argument is without merit. Upshaw claims he was discriminated against when the Commission withdrew his offer on May 21, 2008. Therefore, May 21, 2008 is "the date of the matter alleged to be discriminatory," without regard to whether it was a "personnel action." *See* § 1614.105(a)(1). Further, I am unpersuaded that Congress intended, as Upshaw believes, for its definition of "personnel action" to be imputed from a foreign service statute, 22 U.S.C. § 3905(a), to the employment discrimination context. But even if it did, the withdrawal of an employment offer *is* a "personnel action" under § 3905(a)(2)(B) of the foreign service statute.

   *2. Tolling of the Forty-Five Day Deadline*

Alternatively, Upshaw raises a tolling argument; mainly, that he should be relieved from the 45-day requirement because he "did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred." *See* 29 C.F.R. § 1614.105(a)(2). In support, Upshaw presents evidence that he did not realize until later that the withdrawal was discriminatory. Pl.'s Opp'n 7; Upshaw Decl. ¶¶ 6–7. The Commission does not dispute that Upshaw only learned of the allegedly discriminatory motive on July 9, 2008, but argues only that his realization is not legally relevant in light of the language of the regulation. As the Commission notes, § 1614.105(a)(1), when read alone, requires that Upshaw contact an EEO counselor within 45 days of the "matter alleged to be discriminatory," regardless of when he discovered the discriminatory motive of said matter. 29 C.F.R. § 1614.105(a)(1). However, the next sub-part provides that "[t]he agency or the Commission shall extend" that deadline where the plaintiff reasonably did not know "that the *discriminatory* matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2) (emphasis added). Additionally, 29 C.F.R. § 1614.604(c) confirms that "[t]he time limits in [Part 1614] are subject to waiver, estoppel and equitable

tolling." Therefore, when § 1614.105(a)(1) is read with § 1614.105(a)(2) and § 1614.604(c), it becomes clear that

> [t]he 45-day period for initiating administrative proceedings is tolled if the employee "did not know and reasonably should not have known that the discriminatory matter or personnel action occurred." 29 C.F.R. § 1614.105(a)(2). Stated another way, "[t]he plaintiff's time for filing an EEOC charge [does not start to run until] the plaintiff has a reasonable suspicion that he has been the victim of discrimination." *Johnson v. Gonzales*, 479 F. Supp. 2d 55, 59 (D.D.C. 2007).

*Coghlan v. Peters*, 555 F. Supp. 2d 187, 200 (D.D.C. 2008).

The Commission correctly notes that, in most cases, "'it is notice of the employer's actions, *not* the notice of a discriminatory effect or motivation, that establishes the commencement of the filing period.'" *Young v. Barnhart*, 52 F. App'x 191, 193 (4th Cir. 2002) (quoting *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88–89 (4th Cir. 1990) (en banc)). It further cites Chief Judge Chasanow of this Court for the proposition that the EEOC's decision to accept the investigation after the 45-day deadline does not preclude the Commission from arguing, or the Court from finding, failure to exhaust. *Rock v. McHugh*, 819 F. Supp. 2d 456, 469 (D. Md. 2011). Upshaw urges me not to follow these decisions. Pl.'s Opp'n 7. But they undeniably are correct, their holdings simply do not extend to the matter pending in this case.

*Hamilton* held that the 180-day statute of limitations on actions under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, begins from the alleged discriminatory act, rather than from the employee's discovery of the motive. 928 F.2d at 87. The Fourth Circuit phrased this as a rejection of the "discovery rule" in the context of the ADEA statute of limitations. *Id.* at 88. It based its holding on the clear and unambiguous language of 29 U.S.C. § 626(d), which commands that "[an EEOC] charge shall be filed—(1) within 180 days after the alleged unlawful practice occurred . . . ." While *Hamilton* applies to statutes of limitations, this case is about tolling of an exhaustion deadline when tolling expressly is allowed

by the applicable regulation.  Specifically, the regulation *requires* extensions of the 45-day deadline under the unusual circumstances in which the employee reasonably did not realize that a *discriminatory* action occurred.  *See* 29 C.F.R. § 1614.105(a)(2).

The Commission quotes a footnote from the Fourth Circuit's unpublished decision in *Young*, 52 F. App'x at 193, and general language from this Court in *Rock*, 819 F. Supp. 2d at 469, as foreclosing the discovery rule in this case.  It reads *Young* as extending *Hamilton*'s rejection of the discovery rule for ADEA to the 45-day deadline in § 1614.105(a)(1), a holding it believes is confirmed by this Court in *Rock*.  But when read carefully, it is clear that neither case involves a plausible invocation of § 1614.105(a)(2) tolling.  Indeed, the plaintiff in *Young* had filed several EEOC complaints previously, 52 F. App'x at 192, and so clearly he possessed a "'reasonable suspicion that he ha[d] been the victim of discrimination,'" *Coghlan*, 555 F. Supp. 2d at 200 (quoting *Johnson*, 479 F. Supp. 2d at 59).  Similarly, Chief Judge Chasanow expressly noted in *Rock* that § 1614.105(a)(2) tolling was not requested.  819 F. Supp. 2d at 469.

Thus, the holdings of *Hamilton*, *Young*, and *Rock* simply do not reach the issue where a plaintiff properly requests § 1614.105(a)(2) tolling with supporting evidence.  In my previous Memorandum Opinion, I noted that "Plaintiff offer[ed] no support for his conclusion that the discriminatory act occurred on July 9, 2008" but declined to decide the issue at that "early stage of litigation."  *Upshaw*, 2013 WL 3967942, at *6 n.4.  Through discovery, Upshaw has obtained evidence and provided an explanation entitling him to § 1614.105(a)(2) tolling.  He testified to the EEOC at the outset that he trusted the Commission's reasoning when it told him the rescission was on account of his employment history.  Upshaw Decl. ¶ 8.  He stated that he had no reason to suspect discrimination until he received the Commission's response to his MSPB appeal.  ROI 000025; *see* Upshaw Decl. ¶ 6.

Importantly, this is not a case where the plaintiff "'failed to exercise due diligence in preserving [his] legal rights.'" *Weick v. O'Keefe*, 26 F.3d 467, 470 (4th Cir. 1994) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). For example, the plaintiff in *Rock* waited almost two years from his employer's first allegedly discriminatory action to seek EEOC counseling, 819 F. Supp. 2d at 469, and the plaintiff in *Hamilton* waited seventeen months, 928 F.2d at 87. In contrast, Upshaw believed the Commission's non-discriminatory justification. *See, e.g.*, Upshaw Decl. ¶ 8. Instead of requesting EEO intervention immediately, "he timely pursued administrative review" of the motivation the Commission gave at the MSPB. *See O'Loughlin v. Barnhardt*, 95 F. App'x 34, 34 (4th Cir. 2004) (finding that discrimination action properly was dismissed where the plaintiff failed to establish waiver and "fail[ed] to establish he timely pursued administrative review") (internal citations omitted). Indeed, far from sleeping on his rights, Upshaw's MSPB attorney, Brian C. Plitt, wrote the Commission to dispute the rescission just one week after Upshaw was notified. *See* ROI 000170–71.

Tolling under § 1614.105(a)(2) is a fact-specific relief that should be applied sparingly. *Zell v. Donley*, 757 F. Supp. 2d 540, 544 (D. Md. 2010) (citing *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)); *see Granger v. Aaron's, Inc.*, 636 F.3d 708, 712–13 (5th Cir. 2011). This case warrants such relief in light of the evidence presented by the parties, which shows that Upshaw exercised due diligence in pursuing his rights and would have timely sought EEO counseling but for the Commission's allegedly pretextual justification for the rescission, which caused him to seek MSPB review instead. *English*, 828 F.2d at 1049 ("Equitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." (citing *Lawson v. Burlington Industries*, 683 F.2d 862, 864 (4th Cir. 1982))). Accordingly, Upshaw's deadline to seek EEO counseling was tolled pursuant

12

to § 1614.105(a)(2), and began to run on July 9, 2008. Because he sought EEO counseling less than 45 days later, he timely exhausted his administrative remedies.

### B. Failure to Show Discrimination

Proceeding to the merits, the Commission seeks entry of summary judgment on the grounds that Upshaw (1) has failed to establish a *prima facie* case of race discrimination and (2) has failed to rebut the Commission's legitimate, nondiscriminatory reason for withdrawing his employment offer. Def.'s Mem. 10–15. To establish a *prima facie* case of race discrimination, Upshaw must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004)). If Upshaw makes this showing, "then the burden of production shifts to the employer to proffer a legitimate reason for the alleged discriminatory action." *Id.* (citing *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010)). If the Commission does so, then Upshaw "must demonstrate that the employer's proffered reasons were merely a pretext for discrimination." *Id.* Summary judgment in the Commission's favor is appropriate if Upshaw "fails either to make a *prima facie* case or to rebut the employer's proffered explanation of its actions." *Id.*

### *1. Failure to Establish* Prima Facie *Case of Race Discrimination*

The Commission only challenges the fourth element, which requires that Upshaw show that when the Commission declined to hire him, there were "'circumstances which give rise to an inference of unlawful discrimination.'" *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The

Commission argues that Upshaw cannot make this showing because there is, instead, an inference of nondiscrimination where the same hiring authority who knew Upshaw was African-American when extending the employment offer, later withdrew the offer. Def.'s Mem. 11.

The Fourth Circuit has recognized that an inference of nondiscrimination may be made "where the hirer and the firer are the same *individual*." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (emphasis added). While the Commission asserts that Semple was the hiring authority, it does not state that she was the final authority for the decision to rescind. *See* Def.'s Mem. 11. Therefore, the Commission has failed to establish entitlement to the *Proud* inference because it has not shown that the same *individual* was the final authority for the extension and rescission of Upshaw's employment offer. The Fourth Circuit did not extend the inference to cases where the hirer and firer are the same organization or governmental entity or employer. Such an application would make little sense as it would apply a "strong inference" of nondiscrimination in nearly every case because the same employer usually is the hirer and firer. The Commission has not identified, and I cannot find, any case law supporting the proposition that the *Proud* inference should be extended to treat an organization or governmental entity as a hiring/firing "individual." Absent the inference of nondiscrimination, the evidence supporting Upshaw's claim is sufficient to establish a genuine dispute of material fact as to the inference of discrimination. *See* Upshaw Decl. ¶¶ 2–11 (citing ROI 000273–74).[6]

---

[6] Upshaw produced evidence suggesting that the Commission revokes job offers extended to racial minorities at a higher rate than from others. *Id.* Further, he believes that the rescission of his offer was an example of this practice. Upshaw Decl. ¶ 11; *see* Compl. ¶ 4. Because a group, rather than an individual, makes hiring decisions at the Commission, this evidence would be sufficient to overcome the "strong inference" of nondiscrimination when viewed in conjunction with the other evidence presented by Upshaw. Therefore, even if the *Proud* inference applied, summary judgment would be inappropriate.

*2. Failure to Show Pretext*

Last, the Commission urges me to enter summary judgment because it believes that Upshaw has failed to rebut its proffered legitimate, nondiscriminatory reason for rescinding his job offer: that the Commission needed to fill the position quicker than Upshaw's investigation could be completed. Def.'s Mem. 12–15. Further, the Commission argues that "timeliness and facilitating a smooth transition are legitimate considerations in filling a vacancy," citing *Murchison v. Astrue*, 689 F. Supp. 2d 781, 796 (D. Md. 2010), *aff'd in part, vacated in part*, 466 F. App'x 225 (4th Cir. 2012). While those interests undeniably are legitimate, summary judgment is proper only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Upshaw states in a conclusory manner that race must have been the motivating factor because he "couldn't come up with any [other] plausible explanation" for the rescission. Upshaw Depo. Tr. 27:22 – 28:17. In support, he points to an affidavit from Lakesha Lee, who worked as an HR specialist at the Library of Congress in 2008 and was responsible for verifying OPFs to other agencies. Lakesha Lee Aff. 2, Pl.'s Opp'n Ex. 2, ECF No. 32-3. Presumably, this is the same "Ms. Lee" who confirmed to Schwab that Upshaw was fired, according to the Commission. *See* ROI 000072. But Lee does not recall ever having spoken to the Commission about Upshaw. Lee Aff. 2–3. Thus, Upshaw suggests, albeit obliquely, that the Commission's reason for the rescission (that it learned that Upshaw previously had been fired and therefore would take too long to be hired because he would have to undergo a lengthy background check) was pretext because the Commission never was told Upshaw had been fired.

In the Commission's view, "Lee's statement is irrelevant because, as the Fourth Circuit has explained, '[i]n assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible.'" Def.'s Reply 11, ECF No. 33 (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217–18 (4th Cir. 2007)). Although the Commission's statement of law is correct, it is not true that Lee's statement is irrelevant. The Commission could have believed its reason for rescinding the offer it made to Upshaw was credible only if Lee actually told the Commission that Upshaw was fired. Lee states that she never spoke to the Commission about Upshaw. Therefore, Lee's statement creates a genuine dispute of material fact regarding the Commission's belief in the nondiscriminatory reason it gave for rescinding Upshaw's offer. This clearly is relevant to pretext.

The questionable nature of the Commission's stated reason is strengthened when viewed in conjunction with the evidence that Upshaw vigorously attempted to clarify the circumstances of his departure from the Library of Congress, without avail. *See, e.g.*, Upshaw Decl. ¶¶ 3–5; Upshaw Depo. Tr. 24:8 – 25:19; ROI 5–6, 000021–22, 000059–60, 000071. And, while the Commission states that it did not receive timely assistance from Upshaw to process his application, Upshaw apparently was receiving conflicting instructions from several Commission officials. *See* ROI 000022. Lastly, Upshaw points to the Commission's own statistics, which show a greater rescission rate of job offers extended to racial minorities than to others. Pl.'s Opp'n 9 (citing ROI 000273–74).

In short, Upshaw has offered evidence calling into question the affidavits submitted by the Commission regarding whether he had been fired from the Library of Congress. *See Holland*, 487 F.3d at 216–17 (internal citations omitted). From this, a reasonable juror could

conclude by a preponderance of the evidence that the Commission's "proffered explanation is unworthy of credence." *Id.* at 214 (citing *Burdine*, 450 U.S. at 256). Accordingly, summary judgment is inappropriate. *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)).

## IV.   CONCLUSION

For the reasons explained above, summary judgment is inappropriate because a reasonable juror could "conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). Accordingly, Defendant's Motion for Summary Judgment will be DENIED by separate order and this case will be scheduled for a conference call to set the trial schedule.


Dated: <u>May 12, 2014</u>                                              /S/
                                                                    Paul W. Grimm
                                                                    United States District Judge


jwr